IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DOMINIC F. BARAGONA, et al.,** | |
| **Plaintiffs,** | |
| v. | 1:05-cv-1267-WSD |
| **KUWAIT GULF LINK TRANSPORT COMPANY, et al.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Order Allowing the Submission of Affidavits [29] and Plaintiffs' Memorandum Regarding the Iraqi Law Report [36].[1]

**I.   BACKGROUND**

This is a tort action brought by the parents of Lieutenant Colonel Dominic F. Baragona ("Lt. Col. Baragona"), seeking damages arising from the death of their son, who was killed in an automobile accident in Iraq while serving as an officer in the United States Army.  The Defendants are Kuwait Gulf Link Transport Company ("KGL") and Mahmoud Muhammed Hessain Serour ("Serour").  The

---

[1] Having considered the affidavits submitted by Plaintiffs, Plaintiffs Motion for Order Allowing the Submission of Affidavits [29] is GRANTED.

accident occurred when the Army Humvee in which Lt. Col. Baragona was a passenger collided with a truck owned by KGL and driven by Serour, a KGL employee.

Plaintiffs have asserted an action for wrongful death based on the accident. This Court has determined in prior orders that it has subject matter jurisdiction over the action, and personal jurisdiction over Defendant KGL. At a hearing held on April 25, 2007, Plaintiffs presented evidence and expert testimony on damages.

In an order entered on July 16, 2007 ("July 16 Order"), the Court required Plaintiffs to submit briefing on the laws of Iraq as they relate to this case. The Court's purpose was to determine: (i) whether, under Georgia's conflicts of law rules, Georgia or Iraqi law applies to this action; (ii) whether, under the applicable law, Plaintiffs stated a viable cause of action sufficient to obtain default judgment; and (iii) what measure of damages, if any, is appropriate.

In light of the unique requirements of obtaining Arabic translation services and expert opinions on Iraqi law, the Court granted Plaintiffs a substantial amount of time to complete this briefing. On October 11, 2007, Plaintiffs filed the memorandum requested by the Court. Plaintiffs obtained the aid of Judge Raid Juhi Hamadi Al-Saedi, a former Iraqi judge, and Dr. Abdullah F. Ansary, a Saudi

professor of law with degrees from Harvard and the University of Virginia.  Judge Al-Saedi and Dr. Ansary jointly drafted an expert report on Iraqi law, which Plaintiffs submitted pursuant to Federal Rule of Civil Procedure 44.1.[2]  After reviewing this report, and for the reasons set forth below, the Court finds: (i) Iraqi law applies to this case; (ii) Plaintiffs' complaint states a cause of action under Iraqi law; and (iii) Plaintiffs are entitled to damages of $4,907,048 under Iraqi law.  The Court grants default judgment in this amount.

## II.   DISCUSSION

### A.   Georgia's Conflicts Rules

Federal courts sitting in diversity apply the forum state's choice-of-law principles.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  Under Georgia law, "the *lex loci delicti* determines the substantive rights of the parties." Risdon Enterprises, Inc. v. Colemill Enterprises, Inc., 324 S.E.2d 738, 740 (Ga. Ct. App. 1984).  Georgia's *lex loci* rule is subject to a public policy exception if the harm occurred in a foreign state and the foreign state's rule "[c]ontravenes our

---

[2] "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law."  Fed. R. Civ. P. 44.1.

established public policy, or the recognized standards of civilization and good morals . . ." Alexander v. General Motors Corp., 466 S.E.2d 607, 609 (Ga. Ct. App. 1995), rev'd on other grounds at 478 S.E. 2d 123 (Ga. 1996). The public policy exception applies where "the foreign statute is designed to redress an injury, but prescribes a form of redress which is radically dissimilar to anything existing in our own system of jurisprudence." Id. If the otherwise applicable forum law violates Georgia public policy, Georgia applies its own law. Id.

    B.    Georgia and Iraqi Law at the Time of the Accident

The accident in which Lt. Col. Baragona died occurred on May 19, 2003, in Iraq. Because Iraq is the place of the harm, Iraqi law governs under Georgia conflicts law unless it contravenes Georgia public policy. The Court has evaluated four principles of law that are necessary to determine the outcome in this case: liability for negligence resulting in wrongful death; respondeat superior; standing; and wrongful death damages. The Court concludes that Iraqi law does not contravene Georgia public policy in any of these areas. Iraqi law thus applies.

1. *Liability for Negligence Resulting in Wrongful Death*

Georgia law provides for recovery for wrongful death caused by negligence. O.C.G.A. § 51-4-1. Recovery for wrongful death is available "in all cases in which the death of a human being results from a crime, [or] from *criminal or other negligence . . . .*" Id. (emphasis added). This includes cases where the wrongful death is caused by negligent unsafe driving. See, e.g., Banks v. AJC Intern., Inc., 643 S.E.2d 780 (Ga. Ct. App. 2007).

Iraqi law similarly provides for a cause of action for wrongful death. Article 203 of the Iraqi Civil Law provides, "[i]n case of murder and in case of death resulting from wounds or any other injurious acts renders the perpetrator liable to pay compensation to the dependant of the victim who have been deprived sustenance on account of the murder or death." Negligent unsafe driving is a source of injury that can give rise to a cause of action if it results in harm. Iraqi Civil Code No. 40, Article 227, provides that "every person has the right of passage on the public road provided he (observes) the safety (precautions) so that he will not cause injury to a third party or to himself in the cases where (safety) precautions may be taken."

Plaintiffs allege that Serour violated Lt. Col. Baragona's right of safe passage on a public road by negligent driving that ultimately resulted in Lt. Col. Baragona's death. Because Serour's negligence resulted in death, a cause of action exists under Iraqi law. Iraqi law on this issue is thus not inconsistent with Georgia public policy.

### 2. *Respondeat Superior*

Georgia law provides for employer liability if an employee, acting within the scope of his employment, negligently causes harm in an auto accident. Bedford v. Awod, 545 S.E.2d 162 (Ga. Ct. App. 2001). Respondeat superior liability is presumed if the employer owns the vehicle involved in the collision. Id.

Iraqi law provides for vicarious liability in master-servant relationships. The Iraqi Court of Cassations has held that "every person who exploits an industrial or commercial enterprise [is] responsible for the damage (injury) caused by their employee if the injury resulted from an encroachment committed by them in the course of their service." Decision 33, Court of Cassations, January 27, 1982 (Iraq). This principle is also embodied in Article 219 of the Iraqi Civil Code. The complaint alleges that a KGL employee, in the course of his service to KGL, caused Lt. Col. Baragona's death. Georgia and Iraqi law both provide for

6

respondeat superior liability under the facts present in the complaint. Iraqi law on this issue is not inconsistent with Georgia public policy.

    3.    *Standing*

Under Georgia law, the parents of an adult child have standing to bring a wrongful death action "[i]f the deceased child does not leave a spouse or child . . . ." O.C.G.A. § 19-7-1(c)(2).

Under Iraqi law, a civil action for wrongful death may be brought by any heirs of the decedent. Article 5 of the Iraqi Code of Civil Procedure states, "[i]t is legally valid that one of the heirs can be an adversary in the lawsuit for . . . the dead . . . ." Article 89 of the Iraqi Law of Personal Status defines parents as "heirs."

Georgia and Iraqi law both provide for standing on the part of the Plaintiffs in this case. Iraqi law on this issue is not inconsistent with Georgia public policy.

    4.    *Wrongful Death Damages*

Under Georgia law, damages for wrongful death can be recovered in the amount of "the full value of the life of the child." O.C.G.A. § 19-7-1(c)(1). The full value of the wrongfully ended life "consists of both the economic value of the deceased's normal life expectancy as determined by his expected lifetime

earnings," as well as intangible non-economic factors "incapable of exact proof," or even exact definition.  <u>Dept. of Human Resources v. Johnson</u>, 592 S.E.2d 124, 131 (Ga. Ct. App. 2003) (quotation and citation omitted).

Under Iraqi law, Article 207 of the Iraqi Civil Code requires the court to determine damages "commensurately with the injury and the loss of gain sustained by the victim provided that the same was a natural result of the unlawful act. . . . Deprivation from (loss of) benefits of things will be included in the estimation of damages and the liability may cover the wage (fee/remuneration)." (Pls. Mem. at 7.)  Assessing wrongful death damages under Iraqi law "involves a purely computational approach, related to the victim's present and future career, work, and profits.  Estimates are based on the deceased person's age, as well as on work and economic variables that could affect his social and economic progress," as well as "additional intangible value" (e.g., various positive attributes and hopes for the victims future." (Pls. Mem. at 7-8.)  Under Article 133 of the Iraqi (Prove) Law (No. 107) of 1979, the Court may, but is not required to, rely on expert opinions in estimating damages.  Article 209 of the Iraqi Civil Code states that the Court must also "determine the method of payment of damages."

Georgia and Iraqi law provide for similar, if not identical, measures of

damages in wrongful death suits. Georgia's "full value of the life of the decedent" standard is substantially similar in result to the Iraqi standard of "loss of gain sustained by the victim." Both theories consist primarily of two components: (i) a calculation of an economic value of the victim based on his age, life expectancy, qualifications, and career; and (ii) an estimation of "intangible value." Although the briefing provided suggests that Georgia's law of damages might not be based on precisely the same theory as the Iraqi law of damages, the Court is satisfied that damages in this case would be calculated in a substantially similar manner under either set of laws. Iraqi law on this issue is thus not inconsistent with Georgia public policy.

    C.    <u>Damages</u>

In default proceedings, "damages may be awarded only if the record adequately reflects the basis for award via a hearing or demonstration by detailed affidavits establishing the necessary facts." <u>Adolph Coors Co. v. Movement Against Racism and the Klan</u>, 777 F.2d 1538, 1544 (11th Cir. 1985) (quotation and citation omitted). A hearing is required if the damages claimed are not readily ascertainable from the pleadings and the record. <u>United Artists Corp. v. Freeman</u>, 605 F.2d 854, 857 (5th Cir. 1979).

On April 25, 2007, the Court held a hearing on damages in this case. At that hearing, Plaintiffs presented expert reports and testimony on the loss sustained as a result of Lt. Col. Baragona's death. At the damages hearing, Plaintiffs provided testimony by Dr. Charles Sodikoff, an expert on career management, and Pia Giralamo, a statistician and economist. The testimony at the hearing established the total economic loss from Lt. Col. Baragona's death to be in the range between $3,907,048 to $8,097,326. The expert reports and testimony presumed that Lt. Col. Baragona would have a life expectancy of 78 years, and would work until age 65.

The economic damage amount of $3,907,048 was arrived at by assuming that Lt. Col. Baragona's income would remain consistent with his military salary until his retirement. The economic damage amount of $8,097,326 was arrived at by assuming that Lt. Col. Baragona would enter the private sector in 2009 at a salary of approximately $144,000 per year, and would enjoy salary increases to $273,000 per year by 2014 and $800,000 per year by 2019.[3] The Court finds that the estimates of Lt. Col. Baragona's potential salary in the private sector used to

---

[3] These figures were discounted to present value. The figures also included allowances for fringe benefits.

calculate the higher damages figure is based primarily on speculation.  Plaintiffs have not presented sufficient evidence for the Court to find that Lt. Col. Baragona would be likely to obtain a six-figure salary immediately upon leaving the military.

Having carefully considered the expert reports and testimony in this case, the Court finds that the record supports a computation of damages based on the "victim's present and future career, work, and profits" and "additional intangible value" in the amount of $4,907,048.

### III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Motion for Order Allowing the Submission of Affidavits [29] is **GRANTED**.

The Court enters **JUDGMENT** in the amount of $4,907,048, to be paid by KGL in a single lump payment.

**SO ORDERED** this 5th day of November, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE